IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **NL INDUSTRIES, INC.**, § | |
| § | |
| Plaintiff, § | |
| § | |
| v.  § | Civil Action No. 3:05-CV-2264-L |
| § | |
| **ONEBEACON AMERICA INSURANCE** § | |
| **COMPANY, et al.**, § | |
| § | |
| Defendants. § | |

## **MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiff's Motion to Remand, filed December 19, 2005. After careful consideration of the motion, response, appendices, record, reply, and applicable law, the court **grants** Plaintiff's Motion to Remand, and **denies as moot** all other pending motions.

### **I. Background**

Plaintiff NL Industries, Inc. ("Plaintiff" or "NL") filed this action in the 44th Judicial District Court of Dallas County, Texas, on November 8, 2005 against Defendants OneBeacon America Insurance Company ("OneBeacon"), Certain Underwriters at Lloyd's London ("Lloyd's"), Certain London Market Insurance Companies (the "London Market Insurers")[1], Century Indemnity Company[2] ("INA"), and ACE America Insurance Company ("ACE"), (collectively "Defendants"). OneBeacon filed a Notice of Removal ("Notice") on November 18, 2005, asserting that this court

---

[1]The court, as have the parties, uses the term "London Insurers" to collectively refer to Lloyd's and the London Market Insurers.

[2]According to the parties, this defendant was improperly identified, and the correct name is Insurance Company of North America ("INA"). INA is thus the proper Defendant, and the clerk of the court **is directed** to correct this entry on the docket sheet.

**Memorandum Opinion and Order - Page 1**

has subject matter jurisdiction over this case because "diversity of citizenship exists among the parties" and "the amount in controversy exceeds $75,000.00." Notice ¶ 10.

This case is an insurance coverage action. To put this action in perspective and understand the nature of this litigation, the court relies on the contentions of the parties as set forth in the Proposed Discovery Plan and Report, filed February 23, 2006.

According to Plaintiff's Original Petition, Defendants and/or their predecessors collectively sold primary and excess liability insurance policies to NL over the course of several decades. Third parties have made numerous claims, and brought numerous lawsuits, against NL seeking damages or other relief for various injuries allegedly caused by NL's manufacture, sale, or distribution of lead pigment and lead-based paint (the "Underlying Claims"). In addition, NL believes that third parties will make similar claims, and bring similar lawsuits, against NL in the future (the "Future Claims").

NL contends that OneBeacon has failed to satisfy its defense obligations with respect to, or to reimburse NL for its costs incurred in defending against, the Underlying Claims, in breach of one or more of the insurance contracts issued by OneBeacon. NL also seeks a declaration that OneBeacon and/or the other Defendants are obligated to defend fully and/or to pay in full on NL's behalf all expenses incurred in defense of the Underlying Claims and the Future Claims. Furthermore, NL contends that OneBeacon has dealt with NL in bad faith, and willfully engaged in unfair claim settlement practices in violation of Section 551.060 of the Texas Insurance Code, entitling NL to treble or exemplary damages and attorney's fees.

OneBeacon and the other Defendants each deny that they are obligated to defend or reimburse NL for the expenses NL has incurred defending against some or all of the Underlying Claims. In addition, the London Market Insurers have asserted a cross-claim against the other

Defendants seeking a declaration that, to the extent any Defendants are held to provide coverage to NL for any amounts associated with the defense of one or more of the Underlying Claims, the London Market Insurers' liability is limited to their individual several share, with NL and the other Defendants each bearing responsibility for their own allocated shares.

## II. Subject Matter Jurisdiction Standard

Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *See Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Absent jurisdiction conferred by statute, they lack the power to adjudicate claims and must dismiss an action if it appears that subject matter jurisdiction is lacking. *See Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case. *See Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) ("federal court may raise subject matter jurisdiction *sua sponte*").

A federal court has subject matter jurisdiction over cases arising under the Constitution, laws, or treaties of the United States, or in cases where the matter in controversy exceeds $75,000, exclusive of interest and costs, and diversity of citizenship exists between or among the parties. 28 U.S.C. §§ 1331, 1332. This case was removed to federal court on the basis of diversity of citizenship and that the amount in controversy exceeded $75,000 under 28 U.S.C. § 1332. *See* Notice ¶ 10. Diversity is proper only if each plaintiff has a different citizenship from each

**Memorandum Opinion and Order - Page 3**

defendant. *Getty Oil Corp. v. Insurance Co. of North America*, 841 F.2d 1254, 1258 (5th Cir. 1988). Otherwise stated, 28 U.S.C. § 1332 requires complete diversity of citizenship; that is, a district court cannot exercise jurisdiction if any plaintiff shares the same citizenship as any defendant. *See Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)), *cert. denied*, 541 U.S. 1073 (2004). "[T]he basis on which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty*, 841 F.2d at 1259 (citing *Illinois Cent. Gulf R.R. Co. v. Pargas, Inc.*, 706 F.2d 633 636 n.2 (5th Cir. 1983)). Failure to allege adequately the basis of diversity "mandates remand or dismissal of the action." *Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 805 (5th Cir. 1991).

A partnership or unincorporated association's citizenship is determined by the citizenship of each of its partners. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990). A corporation is a "citizen of any State by which it has been incorporated and of the State where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(1). A natural person is considered a citizen of the state where that person is domiciled, that is, where the person has a fixed residence with the intent to remain there indefinitely. *See Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 555-56 (5th Cir. 1985).

Any doubts as to the propriety of the removal should be construed strictly in favor of remand. *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). "The burden of establishing subject matter jurisdiction in federal court rests on the party seeking to invoke it." *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). Accordingly, OneBeacon must establish that complete diversity exists for the court to exercise subject matter jurisdiction.

**Memorandum Opinion and Order - Page 5**

### III. Analysis

#### A. Contentions of the Parties

NL contends that this court should remand this action to state court because: (1) OneBeacon's Notice is facially defective with respect to the citizenship of Defendants, and (2) OneBeacon failed to establish facially the amount in controversy for each severally liable Defendant. OneBeacon urges the court to deny NL's remand motion. OneBeacon contends that NL invoked federal court jurisdiction based on diversity in prior declaratory judgment actions pertaining to the operation of primary and secondary lead smelters and its manufacture and sale of lead paint pigments and lead-based paint. According to OneBeacon, this litigation involves NL, the present Defendants, and other insurers who issued policies to NL. OneBeacon therefore contends that NL's position and statements in the prior litigation concerning the diversity of the London Insurers should be adequate to establish jurisdiction. OneBeacon also contends that damages sought in each cause of action establishes that the amount in controversy exceeds $75,000, exclusive of interest and costs.

#### B. Allegations regarding Citizenship

The allegations that OneBeacon sets forth regarding the London Insurers is as follows:

> Defendants Certain Underwiters at Lloyd's London and Certain London Market Insurance Companies are unincorporated associations whose members are citizens of the United Kingdom as far as OneBeacon is aware. For diversity purposes, the citizenship of an unincorporated association is determined by the citizenship of each member of the entity and not the citizenship of its state of incorporation.

Notice ¶ 7. OneBeacon acknowledges that it "has no information available to it that would definitively determine the [jurisdictional] questions NL now raises before this [c]ourt." Def.'s Resp. to Pl.'s Mtn. to Remand at 6. OneBeacon states that it is in this predicament because it "had no reason to question the parties' assertions regarding the citizenship . . . of the individual

**Memorandum Opinion and Order - Page 6**

underwriters." *Id*. This approach, however, is unavailing, as it overlooks the basic principle that the one who seeks to invoke federal court jurisdiction bears the burden of establishing that such jurisdiction exists. As OneBeacon seeks to invoke federal court jurisdiction, it should be fully prepared to meet that burden by making the affirmative and distinctive allegations required regarding diversity, or provide the necessary proof that establishes diversity. As the removing party has the burden to establish jurisdiction, it should not rely on its opponent to carry the day. After all, that a case is initially filed in state court, rather than federal court, demonstrates a strong preference by a plaintiff that it desires to be in state court. In such instances, remand motions are quite common and should be reasonably anticipated by a defendant prior to removal so that it is in a position to counter effectively a plaintiff's attempts to have the action remanded.

In this particular case, OneBeacon acknowledges that citizenship of each individual Underwriter[3] subscribing to the London Insurers' policies is relevant and must be applied. To understand better the nature of this action and put it in perspective, the court believes that a discussion of the structure and makeup of Lloyd's of London is in order. The Fifth Circuit recently described in detail Lloyd's of London, and the court finds such description to be informative and illustrative:

> Lloyd[']s of London is not an insurance company but rather a self-regulating entity which operates and controls an insurance market. The Lloyd's entity provides a market for the buying and selling of insurance risk among its members who collectively make up Lloyd's. Thus, a policyholder insures *at* Lloyd's but not *with* Lloyd's.
>
> The members or investors who collectively make up Lloyd's are called "Names" and they are the individuals and corporations who finance the insurance market and ultimately insure risks. Names are

---

[3]Per *Corfield*, 355 F.3d at 858, the court uses the terms "Underwriter" and "Name" interchangeably.

**Memorandum Opinion and Order - Page 7**

underwriters of Lloyd's insurance and they invest in a percentage of the policy risk in the hope of making return on their investment. Lloyd's requires Names to pay a membership fee, keep certain deposits at Lloyd's, and possess a certain degree of financial wealth. Each Name is exposed to unlimited personal liability for his proportionate share of the loss on a particular policy that the Name has subscribed to as an underwriter. Typically hundreds of Names will subscribe to a single policy, and the liability among the Names is several, not joint. *Id.*

Most Names or investors do not actively participate in the insurance market on a day to day basis. Rather, the business of insuring risk at Lloyd's is carried on by groups of Names called "Syndicates." In order to increase the efficiency of underwriting risks, a group of Names will, for a given operating year, form a "Syndicate" which will in turn subscribe to policies on behalf of all Names in the Syndicate. A typical Lloyd's policy has multiple Syndicates which collectively are responsible for 100 percent of the coverage provided by a policy. The Syndicates themselves have been said to have no independent legal identity. Thus, a Syndicate is a creature of administrative convenience through which individual investors can subscribe to a Lloyd's policy. A Syndicate bears no liability for the risk on a Lloyd's policy. Rather, all liability is born[e] by the individual Names who belong to the various Syndicates that have subscribed to a policy.

Each Syndicate appoints a managing agent who is responsible for the underwriting and management of each Name's investments. The managing agent receives this authority through contracts with each Name. The managing agent receives this authority through contacts with each Name. The managing agent, which is typically a legal entity, appoints one of its employees to serve as the "active" underwriter for the Syndicate. The active underwriter selects the risks that the Names in the Syndicate will underwrite and has the authority to bind all the Names in the Syndicate. The active underwriter has the authority to buy and sell insurance risks on behalf of all Names in the syndicate, and to bind the Syndicate members in these transactions.

In practice, since many Names through their respective Syndicates are liable on a Lloyd's policy, the active underwriter from *one* of the underwriting Syndicates is designated as the representative of *all* the Names on the policy. This single underwriter, called the "lead" underwriter on the policy, is usually the

>only Name disclosed on the policy with all other Names remaining anonymous. The lead underwriter is typically the first to subscribe to the policy and typically assumes the greatest amount of risk. The Lloyd's corporate entity maintains records on the identity and last known residence of Names insuring risk in the Lloyd's market. That information is kept strictly confidential.
>
>In sum, while an insured receives a Lloyd's "policy" of insurance, what he has in fact received are numerous contractual commitments from each Name who has agreed to subscribe to the risk. The Names are jointly and severally obligated to the insured for the percentage of the risk each has agreed to assume. The insured does not have to sue each Name individually however to collect on their individual promises because the typical Lloyd's policy contains a clause providing that "any [Name] can appear as representative of all [Names]." Thus, when litigation ensues over a Lloyd's policy, the only named Lloyd's party appearing in the litigation is usually the lead underwriter on the policy. The standard Lloyd's policy states "that in any suit instituted against any one of [the Names] upon this contract, [all the Names] will abide by the final decision of such Court or of any Appellate Court in the event of an appeal." Thus, each Name is contractually bound on an individual basis to the insured to adhere to any adverse judgment reached in the suit notwithstanding that only one Name participates in the litigation as a named party. Thus, a Syndicate, being only a grouping of Names, has no contractual relationship with the insured.

*Corfield*, 355 F.3d at 857-59 (citations and footnote omitted, and emphasis in original).

In this case, NL sued Certain Underwriters at Lloyd's of London. As such, the suit is against each Name or Underwriter who is a subscriber to the policies in question. These Underwriters are described as "syndicates, corporations, and other entities that are citizens of the United Kingdom or of the United States." Pl.'s Original Pet. ¶ 4. As NL has sued numerous Names, they are the "real" parties to this action, and their citizenship must be distinctly and affirmatively set forth, or established by proof. This is not a situation like that present in *Corfield* where only *one* Name or Underwriter was a party to the suit. In *Corfield*, the Name sued only on its own behalf as the lead underwriter and was not suing in a representative capacity on behalf of any other underwriter. *Id.*

**Memorandum Opinion and Order - Page 9**

at 857. In the present case, NL clearly sues a number of Underwriters or Names subscribing to the policies made the bases of this suit. Under these circumstances, the citizenship of the Names is relevant to the issue of diversity. As the citizenship of the Names is not affirmatively and distinctly set forth, OneBeacon fails to establish that complete diversity exists among the parties. The conclusory and bare statement by OneBeacon that the London Insurers "are unincorporated associations whose members are citizens of the United Kingdom as far as OneBeacon is aware" is simply too slender of a reed to distinctly and affirmatively allege, or establish, the citizenship of these entities. In light of NL specifically raising a question and putting OneBeacon on notice regarding the citizenship of the London Insurers, as being that of the United Kingdom or of the United States, Pl.'s Original Pet. ¶ 4, NL's statement specifically challenges OneBeacon's naked assertion regarding citizenship. OneBeacon thus had even more of an obligation to affirmatively and distinctly set forth the allegations regarding the citizenship of these entities. Since the allegations regarding citizenship of the Names are wholly inadequate, remand of this action is necessary.

### C. Allegations regarding Amount in Controversy

For a federal court to exercise subject matter jurisdiction pursuant to 28 U.S.C. § 1332, complete diversity and the jurisdictional amount must both exist. If either is not satisfied, the court lacks subject matter jurisdiction. As the court has determined that OneBeacon fails to demonstrate that complete diversity exists among the parties, it lacks subject matter jurisdiction to entertain this action. Since OneBeacon fails to establish the diversity requirement, the court need not address whether the amount-in-controversy requirement has been met.

**Memorandum Opinion and Order - Page 10**

### D.   Prior Litigation

The references by OneBeacon to prior litigation to establish jurisdiction is of no moment. That jurisdiction may have existed before or that the parties believed jurisdiction existed in prior litigation involving essentially the same parties does not establish jurisdiction for the present case. First, the parties may have all believed, mistakenly or otherwise, that jurisdiction existed and therefore did not challenge it. Second, the law may have changed or further developed since the prior litigation, such that what was legally correct or sufficient in the prior litigation no longer holds true for the current litigation. Simply put, the parties may have had no legal or factual basis at the time to question the court's jurisdiction. Third, this court does not have sufficient and specific allegations, or proof, by way of OneBeacon's Appendix, or otherwise, to determine the citizenship of the London Insurers. Finally, regardless of any position taken by the parties or NL's invocation of federal jurisdiction in prior litigation, OneBeacon was put on notice that the citizenship of these entities was that of the United Kingdom or the United States. Accordingly, OneBeacon knew when it was served that the issue of diversity could be fatal to removal of this action.

### E.  Jurisdictional Discovery

OneBeacon urges this court to allow it to conduct limited jurisdictional discovery to address the citizenship of the individual Names or Underwriters. According to OneBeacon, "the structure and characteristics of Lloyd's suggest[ ] that the London Insurers' counsel or NL would be the only source of obtaining information that would have any information regarding the individual Underwriters' citizenships and potential exposure under the policies." Def.'s Resp. to Pl.'s Mtn. to Remand at 6. NL opposes limited discovery and contends that case law does not mandate that the

court order limited jurisdictional discovery and that jurisdictional discovery places an unnecessary burden on the parties and the court.

In seeking jurisdictional discovery, OneBeacon relies on *Garbin v. Gulf South Pipeline Co.*, No. Civ. A. 01-2659, 2001 WL 1386067 (E.D. La. November 7, 2001). In *Garbin*, the district court permitted limited discovery on the diversity issue and the amount-in-controversy requirement. *Id*. at *2. In *Garbin*, the plaintiff asserted that "Plaintiff does not know [defendants'] true identities. Plaintiff further alleges that Defendants know the true names of these parties but have not divulged this information." *Id*. at *1. OneBeacon makes no assertion that NL or the London Insurers' counsel know the actual identities of all the Names or Underwriters. OneBeacon merely *suggests* that counsel has such information but offers no basis to support this suggestion. Moreover, OneBeacon does not state whether inquiry has been made and whether NL or counsel for the London Insurers have refused to divulge the information or to inform it from where such information can be obtained. The court should not order jurisdictional discovery when OneBeacon can only *suggest* by way of a tenuous statement, rather than assert or declare with any degree of certainty, that counsel or NL has the necessary information regarding the citizenship of the Names or Underwriters.

Further, the imposition of jurisdictional discovery places an undue and unnecessary burden on the parties when the proponent of such discovery only supports the request by conjecture, speculation, or suggestion. Moreover, as the court stated earlier, the party removing to federal court should not seek to have its opponent carry the day. The court does not believe jurisdictional discovery should be undertaken when the party requesting such discovery can only suggest or speculate that the requested discovery will shed light on or resolve the issues pertaining to diversity of citizenship. This approach is consistent with what the court did in *Garbin*. Since OneBeacon has

**Memorandum Opinion and Order - Page 12**

failed to meet the minimum threshold for this court to allow jurisdictional discovery, such failure warrants denial of the requested discovery. Accordingly, the court **denies** OneBeacon's request for jurisdictional discovery.

### IV. Conclusion

For the reasons stated herein, the court **grants** Plaintiff's Motion to Remand. The court hereby **remands** this action to the 44th Judicial District Court, Dallas County, Texas, pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction. The clerk of the court shall effect this remand in accordance with the usual procedure. In light of this remand to state court, the court **denies as moot** all other pending motions.

**It is so ordered** this 8th day of June, 2006.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge